# U. S. CIRCUIT COURT.

## FANNY D. WYLIE agt. THE NORTHAMPTON NATIONAL BANK.

*National banks — Their liability for stolen bonds belonging to special depositors — Negligence — Proof necessary to establish.*

A national bank cannot enter into a valid contract to undertake the business of the recovery of the stolen property of special depositors.

The directors might be liable individually.

To recover against a bank for bonds left with the bank as a gratis bailment, something more is needed than the mere fact that they were stolen from the bank.

A complaint claiming that the bank recovered $1,500,000 back from the thieves, or an agreement that in consideration of such recovery the bank allowed the thieves to retain the property of plaintiff and other special depositors, states a valid cause of action, but here there is no proof sufficient to go to the jury as to this branch of this cause of action.

In such an action the plaintiff will be held to proof of the allegations made, and will not be allowed to rest on proof of other negligence.

*Southern District of New York, January,* 1883.

THE Northampton National Bank was robbed of the property of itself and of various special depositors, including the plaintiff, to the amount of about $1,600,000. Five years later all but $130,000 of the property was recovered from the thieves. Among the property not recovered were bonds to the value of $10,180 belonging to the plaintiff. The other facts appear in the statements of counsel and the opinion of the court.

*W. G. Peckham* and *E. W. Tyler,* for defendant, moved the court at the close of the plaintiff's evidence to direct a verdict for the defendant. As to the first cause of action, negligence in the keeping of a gratis deposit, the mere fact that the goods were stolen does not establish negligence under the American decisions (*Comp* agt. *Carlisle Bank,* 94 *Penn.,* 409; *Foster* agt. *Essex Bank,* 17 *Mass.,* 479); and proof of gross negligence was required even in *National Bank* agt.

*Graham* (100 *U. S.*, 699). Furthermore, plaintiff may not plead a tort that amounts to a crime and attempt to recover on proof of a trifling negligence not set out in the complaint, viz., the not sending of notices of the robbery to Frankfort-on-the-Main, or the attempted proof that a director wrongfully recovered his own special deposit (*Dudly* agt. *Scranton*, 57 *N. Y.*, 424; *Parker* agt. *The Rens. and Saratoga R. R. Co.*, 16 *Barb.*, 316; *Ross* agt. *Mather*, 51 *N. Y.*, 108; *Delevan* agt. *Simonson*, 35 *Super. Ct.*, 243). The directors and officers, all of them, acting as individuals cannot bind the bank to such an undertaking (to recover another's stolen property) as that in the complaint. They must at least have acted as a board in an official corporate capacity (*Alleghany Co. Workhouse* agt. *Morse*, 95 *Penn.*, 408; *East Anglian R. R. Co.* agt. *Eastern Co.*, 21 *L. J.* [*N. S.*], 23; *Chem. Nat. Bank* agt. *Kolmer*, 8 *Daly*, 532). Even in the *One Hundred United States* case the court says: "We do not mean, however, to say it (the bank) could convert itself into a pawnbroker's shop." Such an undertaking as this a national bank has no charter or power to undertake (*Judge* WHEELER, in *Wylie* agt. *Nat. Bank of Brattleboro*, 47 *Vt.*, 550, and *Whitney* agt. *Same*, 50 *Vt.*).

*George H. Adams* and *Artemas H. Holmes*, for plaintiff, oppose the motion on the ground that in New York practice the proof of the negligence as to notices sent abroad and as to acts of the director H. are admissible and sufficient, and that proof of *dolus* is not essential in an action for negligence, citing *Wharton on Negligence; National Bank* agt. *Graham* (100 *U. S.*, 699), and *Abbott's New York Forms of Pleading*. The director H. and the vice-president promised to undertake the recovery of the plaintiff's property. Their action was approved by the other officers. The bank made similar agreements with the other special depositors, and in fact with all the depositors, at a meeting.

WHEELER, *J.* — The constitution gives the right to trial by jury; not trial by the court in the presence of the jury, but

trial by jury in fact. At the same time it is the duty of the court to decide whether there is any evidence to go to the jury tending to prove the facts. If there is not, why then the court is not in duty bound and has no right to submit to the jury what the facts may be in order to make out a case. It requires proof, and proof of facts, and proof of facts tending to establish the ground of recovery.

The complaint goes for this: negligence about keeping the bonds in the first place. Then it goes on and alleges an agreement by the bank to act for the plaintiff in recovering her bonds from the thieves or persons who had them, and for a breach of that agreement — that is, neglect in not recovering the bonds for her — and specifies as a ground of recovery in the complaint that in recovering their own property they traded away hers. That they agreed with the robbers that if they would let them have what they did return they might keep plaintiff's bonds. Of course if they could make that out they would have a good case; but the evidence not only does not show that the bank made that agreement with the robbers, but it shows they did not. The direct evidence upon the point of what the arrangement was by which the bonds were finally recovered shows that the bank did not agree to that. The witness on that point so testifies. The evidence shows that that was not a part of the agreement, so that part of the case is not made out. Now then as to the agreement to act for her. In the first place I do not think that the stockholders of a national bank could be bound by an agreement by their president or cashier or directors, or all of them together, to undertake the job of hunting up any stolen bonds, as a bank. It is no part of the purpose for which a bank is chartered; it is no part of the business of the bank. I do not think the bank would be bound by any such agreement. But suppose they could. Now this complaint says that they agreed to act for her in negotiating for the recovery of these bonds. That would mean that they were bound to do the best they could in making those negotiations. The matter of

advertising the bonds had all gone by when the agreement was made.  Now I think there is evidence sufficient to go to the jury that the plaintiff was fairly given to understand by the officers of the bank that they would act for her.  They had lost their own securities and lost the securities of a great many other depositors and they were trying to get them all back.  I think they gave her to understand that in trying to get theirs they would try to get hers or would do the best they could.  Now if they were bound by that agreement and did do as well as they could reasonably, they would not be liable. So we shall have to look at this evidence and see if it shows any act, anything which we could see they did that they ought not to have done, or did not do which they ought to have done.  Now I am not able to see, after looking it all over, anything that they could do that they did not do.  Now here was Mr. Hinckley, a depositor who had $25,000, I believe, of bonds of a particular class, which he owned, which he got track of, which he negotiated for, and part of which he got back.  Now they say the bank ought not to have let him get back his, without getting back hers.  They could not hinder him any more than they could her.  The most they could do would be to act on any information that they got through him that the bonds were here, here in New York. They were all the while fishing for information about that.

There is nothing to show that they had anything definite that they could act upon or that they didn't do as well as they could.  When they came to a final negotiation by which they got $1,500,000, her bonds were not here ; they were not with those they got.  They did not agree that theirs should be given up and hers should be lost.  Her bonds were on the other side of the water ; they were not here at all.  They were not dealing with those who had them.  Now, I could not say to the jury that here is anything that I submit to you as proof of neglect on the part of this bank as a bank.  If I were to say that we would hear the defense, and go along with a large number of witnesses, no matter what they should testify to, it

would come to this in the end.   The plaintiff declared for a good case.   If she could prove her complaint, she would have an excellent case.   If she could prove that this bank, having got track of these bonds, made an agreement with the robbers and thieves that they might keep hers if they would give up theirs, that would be a good case anywhere.   That is not proved; it is disproved.   They didn't do any such thing; they did not trade her out; they didn't throw her stock overboard to get theirs.   And notwithstanding the plaintiff's misfortune— which all of us, of course, regret — I don't think as to that part of the case that there is enough of it that tends to prove anything done or not done which ought to go to the jury; and I think at the bottom of all of it that the bank as a bank, to bind the stockholders so as to take a large sum out of their assets, could not undertake such a job; it is no part of its business.   I should hold that such a bargain as that, made with the directors, was an individual thing, and bound them personally, if at all, and not the bank.   I should say that so far as this case rests on an agreement to do a thing and failure to do it, the bank was not competent in law to make such an agreement; and so far as doing anything about the bonds, there is no proof that they ever could have got her bonds, ever had a chance to get them or acted about them in a way that they could be charged with neglect.   Now about the first part of the case, for the negligent keeping, actual keeping of the bonds in the bank, the proof that stands here is that the Northampton National Bank received these bonds to keep; she signing, as she said she supposed she did, a certain paper envelop in which the bonds were placed.   We have no proof here except that the bonds were left there by her; that she called for them and didn't get them; they were gone, they were stolen.   The pleadings say that, and I believe the witness says that the directors said that.   I am inclined to rule on that also in favor of the bank.   So you may take a verdict for the defendant.

The jury accordingly rendered a verdict for the defendant.